```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND

                                    :
SENSORMATIC SECURITY CORPORATION
                                    :

     v.                             : Civil Action No. DKC 2002-1565

                                    :
SENSORMATIC ELECTRONICS
CORPORATION, et al.                 :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract action is the motion by Sensormatic Electronics Corporation ("Sensormatic"), ADT Security Services, Inc. ("ADT"), and Wallace Computer Services, Inc. ("Wallace") for reconsideration of the court's September 7, 2006 Order (paper 229) partially denying motions for summary judgment in favor of these parties. (Paper 230).  Also pending are a renewed motion by Sensormatic, ADT, and Wallace to seal several documents filed in this case, (paper 231); a motion by Sensormatic Security Corporation ("SSC") to file a supplemental memorandum in opposition to the motion for reconsideration (paper 236); and a motion by Sensormatic and ADT to strike SSC's reply in support of its motion to supplement (paper 240).  The issues have been briefed fully and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion for reconsideration will be denied, and the motion to seal will be granted in part.  The motions to file a supplemental opposition and to strike will be denied as moot because the motion for reconsideration will be denied without

consideration of SSC's proposed supplemental memorandum in opposition.

## I. Background

The facts and history of this case are explained in detail in the September 7, 2006 Memorandum Opinion, and need not be restated here. Of relevance to the present motion, Sensormatic Security Corporation ("SSC") claims that Sensormatic breached a contract (the "Franchise Agreement") with SSC by failing to pay commissions and by authorizing third parities, including ADT, to compete with SSC by selling security products including closed circuit television ("CCTV") products in SSC's franchise area. SSC also asserts claims against ADT and Wallace for intentionally interfering with the Franchise Agreement by inducing Sensormatic to breach it. Sensormatic is alleged to have licensed Wallace to manufacture and distribute, in areas including SSC's franchise area, certain adhesive labels used by some Sensormatic security devices. Sensormatic, ADT, and Wallace previously moved for summary judgment in their favor as to each of these claims.[1] These motions were denied in part by the court's September 7, 2006 Order. Sensormatic and ADT seek partial reconsideration of the court's prior determination with respect to the breach of contract and

---

[1] SSC initially moved for partial summary judgment in its favor, (paper 202), and Sensormatic, ADT, and Wallace opposed that motion and filed cross-motions for summary judgment in their favor. (Papers 210-211).

2

intentional interference with contract claims.  They argue that partial summary judgment should be entered with respect to SSC's breach of contract claims that arise from sales of CCTV systems to nonretail customers.  Wallace seeks reconsideration of the denial of its cross-motion for summary judgment as to the intentional interference with contract claim.  It contends that the evidence relied upon in the court's September 7, 2006 Memorandum Opinion was not legally sufficient to withstand the motion for summary judgment.

## II.  Motion for Reconsideration

### A.  Standard of Review

As the United States Court of Appeals for the Fourth Circuit has explained, reconsideration of an interlocutory order such as a grant or denial of partial summary judgment, is within the discretion of the district court and is not subject to the limitations imposed by Fed.R.Civ.P. 59(e) and 60(b).

> [A]n order of partial summary judgment is interlocutory in nature.  *See, e.g.*, 11 *Moore's Federal Practice* § 56.40[3] (Matthew Bender 3d ed.) ("A partial summary judgment order is interlocutory...."). Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment.  *See* 12 *Moore's Federal Practice* § 60.23 ("Rule 60(b) does not govern relief from interlocutory orders...."). This is because a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted.  *See Fayetteville Investors v.*

>  *Commercial Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991) ("An interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment."); *cf.* Fed.R.Civ.P. 54(b) (providing that interlocutory orders that resolve fewer than all claims are "subject to revision at any time before the entry of [final] judgment"). Said power is committed to the discretion of the district court, *see Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 12, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge"). . . .

*Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). Thus, a denial of summary judgment may be revisited and summary judgment entered if the court merely becomes convinced that the earlier ruling was in error. *See, e.g., Crain v. Butler*, 419 F.Supp.2d 785, 788 n.1 (E.D.N.C. 2005).

**B.  CCTV Sales to Nonretail Customers**

Sensormatic and ADT seek reconsideration of the court's September 7, 2006 Order, arguing that the court should have granted partial summary judgment in their favor as to SSC's claims for breach of contract and for tortious interference with contract against ADT (counts I, II, and IV) with regard to nonretail sales of CCTV products.  Sensormatic and ADT contend that SSC failed to come forward with adequate evidence to support a conclusion that sales of any CCTV products to nonretail customers violated the franchise agreement, because SSC has not forecast evidence demonstrating that any of these products were for theft prevention

4

purposes. Sensormatic previously argued that the Franchise Agreement covered only sales to retail customers, but the court rejected this interpretation, holding that the contract's language unambiguously referred to the use of the product to determine the scope of covered sales.

> CCTV products marketed by Sensormatic are within the scope of the Franchise Agreement and Settlement Agreement *to the extent that the product is used for the prevention and detection of shoplifting and other theft*. The court further grants in part and denies in part Sensormatic's cross-motion for summary judgment . . . and determines that CCTV sales to non-retail users do not implicate SSC's franchise rights, *provided that the customer is not using the product for the prevention and detection of shoplifting and other theft*.

(Paper 228, at 27-28, emphasis added). In light of the court's conclusion that the scope of the franchise agreement is determined based on use, a conclusion that Sensormatic and ADT do not now challenge, partial summary judgment with respect to nonretail CCTV sales is not warranted.

First, the Franchise Agreement provides no basis for the distinction between retail and nonretail CCTV customers that forms the core of the present motion for reconsideration. As the Memorandum Opinion accompanying the court's September 7, 2006 Order explained, the scope of the Franchise Agreement is based on the use of the product, rather than the business in which the customer is engaged. The Franchise Agreement thus provides no basis or

5

justification for any distinction between retail and nonretail purchasers of CCTV systems.

Furthermore, the partial summary judgment determination that Sensormatic and ADT seek is not appropriate because it is not practicable given the circumstances of this case. Partial summary judgment that does not resolve any complete claim is authorized pursuant to Fed.R.Civ.P. 56(d), which provides:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

As discussed above in setting out the standard of review for a motion for reconsideration of an interlocutory order denying summary judgment, the determination of whether to reconsider a prior ruling is also within the discretion of the district court.

Even if Defendants were justified by the text of the Franchise Agreement in seeking to distinguish between retail and nonretail CCTV customers, the parties do not agree as to how the term retail should be interpreted. The Franchise Agreement provides no legal

justification, and Sensormatic and ADT articulate no other basis or justification, for the court to engage in a determination as to which CCTV customers are retail. Because this dispute is unresolved and there is no legal basis upon which it could be resolved, the partial summary judgment determination requested by Sensormatic and ADT is not practicable or appropriate, and the court will exercise its discretion not to reconsider further this aspect of its September 7, 2006 ruling.

**C.   Wallace's Cross-Motion for Summary Judgment**

Wallace argues that the court's rationale, as expressed in the September 7, 2006 Memorandum Opinion, did not support denial of its cross-motion for summary judgment. Wallace contends that SSC has not come forward with sufficient evidence to support a finding that Wallace induced Sensormatic to breach the agreement. A claim of tortious interference with an existing contract has five required elements:  "(1) existence of a contract between plaintiff and a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional interference with that contract; (4) breach of that contract by the third party; and (5) resulting damages to the plaintiff." *Fowler v. Printers II, Inc.*, 89 Md.App. 448, 466 (1991), *cert. denied*, 325 Md. 619 (1992). Offering attractive terms is a method, recognized under Maryland law, by which a third party may commit tortious interference by inducing a party's breach of the contract. *See Cumberland Glass Mfg. Co. v. De Witt*, 120 Md.

7

381, 393 (1913), *aff'd*, 237 U.S. 447 (1915); *see also Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate Inc.*, 2000 WL 248170, at *6 (4th Cir. March 6, 2000) (Unpublished Disposition); Restatement (Second) of Torts § 766 cmt. m ("Another method of inducing B to sever his business relations with C is to offer B a better bargain that which he had with C."). "[W]here there is an existing contract, not terminable at will, between a plaintiff and a third party, acts by a defendant to induce the third party to breach that contract are, themselves, improper and wrongful" even when carried out only to compete for the subject of the contract. *Macklin v. Robert Logan Assocs.*, 334 Md. 287, 304 (1994); *see also Prudential Real Estate*, 2000 WL 248170, at *3 & n.4.

The court previously ruled that, because evidence of an intent to interfere with a contract creates an issue of material fact as to inducement of an eventual breach,

> the issue of whether Wallace intentionally interfered in the Franchise Agreement by inducing Sensormatic to breach the Franchise Agreement is a question of material fact that a jury must resolve. Because the evidence creates a question of fact, neither party is entitled to summary judgment with respect to the tortious interference claim against Wallace (Count VI).

(Paper 228, at 53). Before reaching this conclusion, the court's prior Memorandum Opinion summarized the party's arguments on the issue of inducement.

> SSC contends that Wallace induced a breach by offering better terms to Sensormatic. (Paper 202, at 55). SSC points out that the agreement between Wallace and Sensormatic allowed Sensormatic to avoid paying SSC a commission of 40% of gross revenues received from label sales in SSC's territory. . . .
> . . . Wallace . . . presents evidence that Sensormatic independently approached several companies as potential business partners to help manufacture labels. (Paper 211, at 8). Specifically, Wallace cites a 1996 inter-office memo in which a Wallace representative noted that Sensormatic had spoken with two companies in addition to Wallace, and the deposition testimony of Douglas Thomas, who stated that Sensormatic wished to provide retail trade organizations with an alternative label source. (Paper 210, Thomas dep., 12:1-15, Mar. 31, 2004). Thomas testified, however, that he was unsure whether it was Wallace's idea or Sensormatic's idea to have a second supplier of labels. . . .

(*Id.* at 52-53). Wallace seeks reconsideration of the court's prior ruling, arguing that the court improperly relied on evidence that Wallace and Sensormatic agreed to more favorable terms than those provided Sensormatic under the Franchise Agreement and that Douglas Thomas, SSC's Sales Manger, did not know whether Sensormatic or Wallace initiated their price negotiations to overcome Wallace's evidence that Sensormatic solicited price quotes from Wallace and other companies. Wallace contends that the evidence was insufficient to support a finding of infringement, and that it was therefore entitled to summary judgment as to SSC's tortious interference claim.

This argument implies that Wallace would only be liable for intentional interference if it, and not Sensormatic, initiated the negotiations that led to Sensormatic purchasing labels from Wallace. Wallace has not established, however, that it would be entitled to summary judgment as a matter of law under these facts. Wallace cites no authority, and the court is aware of none, holding that a tortious interference with contract claim is defeated as a matter of law by evidence that the third party, with whom the plaintiff has a contract, sought out offers that would violate the contract if made and accepted.

A defendant has not induced a breach of contract under a tortious interference theory when the third party, in this case Sensormatic, has already repudiated the contract in advance of the alleged inducement because the defendant's conduct could not have induced the breach under these circumstances. *Prudential Real Estate*, 2000 WL 248170, at *7. Wallace's evidence that Sensormatic sought prices from other label manufacturers, however, does not require a conclusion that Sensormatic had thereby breached or repudiated the Franchise Agreement, because the Franchise Agreement bars Sensormatic from authorizing competing sales only within SSC's franchise territory and permits sales to national accounts even within that territory under certain circumstances. SSC has forecast evidence that Wallace offered to produce labels for Sensormatic on terms that it knew were more favorable to

10

Sensormatic than the terms of the Franchise Agreement, with the intent that Sensormatic would purchase labels from Wallace. If Wallace knew of the contract, this evidence could support the intentional inducement element of SSC's tortious interference claim. *See Cumberland Glass Mfg. Co. v. De Witt*, 120 Md. 381 (1913); *see also Prudential Real Estate*, 2000 WL 248170, at *6. As the court previously observed, the issue of whether Wallace's conduct actually induced Sensormatic's alleged breach is a question of fact for the jury, (paper 228, at 53), and Wallace is not entitled to summary judgment with respect to this claim.

**III. Motion to Seal**

Sensormatic, ADT, and Wallace have filed a renewed motion to seal documents pursuant to Local Rule 105.11. It provides:

> Any motion seeking the sealing of pleadings, motions, exhibits or other papers to be filed in the Court record shall include (a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protections. The Court will not rule upon the motion until at least 14 days after it is entered on the public docket to permit the filing of objections by interested parties. Materials that are the subject of the motion shall remain temporarily sealed pending a ruling by the Court. If the motion is denied, the party making the filing will be given an opportunity to withdraw the materials.

There is a well-established common law right to inspect and copy judicial records and documents. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). If competing interests outweigh

the public's right of access, however, the court may, in its discretion, seal those documents from the public's view. *See In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Furthermore, prior to sealing any documents, the court must provide notice of counsel's request to seal and an opportunity to object to the request before the court makes its decision. *See Knight,* 743 F.2d at 235.[2] Either notifying the persons present in the courtroom or docketing the motion "reasonably in advance of deciding the issue" will satisfy the notice requirement. *Id.* Finally, the court should consider less-drastic alternatives, such as filing redacted versions of the documents. If the court decides that sealing is appropriate, the court should provide reasons, supported by specific factual findings, for its decision to seal and for rejecting alternatives. *Id.*

The parties previously moved to seal a wide range of papers in this case, and the court denied these motions to seal without prejudice. (Paper 229). Sensormatic, ADT, and Wallace renewed their motions to seal with respect to only eight documents (paper 231), and since that time have filed proposed redacted versions of six of the documents. (Paper 234). Sensormatic, ADT, and Wallace have supplied a declaration by Chris Davell, who is Vice President

---

[2] Although the court must provide notice prior to making a decision to seal, it is appropriate to seal documents, temporarily, while the underlying motion to seal is under consideration. *See Knight*, 743 F.2d at 235, n.1.

of Sensormatic and Director of Retail Operations and Sales Support for ADT, that identifies confidential customer list and past sales and price information contained in the six documents for which redaction has been proposed. The other two documents that the parties move to seal are briefs filed under seal in litigation before the United States District Court for the Western District of Pennsylvania. The renewed motion to seal is unopposed.

The public notice requirement of Local Rule 105.11 has been met with respect to the renewed motion to seal. The motion is also supported by specific evidence that details the interests that favor sealing the documents, as required by Local Rule 105.11(a). The two briefs that were filed under seal in the District Court for the Western District of Pennsylvania in *Sensormatic Electronics Corp. v. First National Bank of Pennsylvania*, Civ. No. 99-756, were filed in this case as exhibits 3 and 5 to Sensormatic's cross-motion for summary judgment (paper 210). This court lacks the authority to review the decision of its sister court to place these briefs under seal, which presents a sufficient justification to seal the two briefs from that litigation that have been filed in this matter.

Mr. Davell's declaration provides specific factual support for the need to protect the information contained in six other documents, exhibits T, AA, BB, and UU associated with SSC's motion for summary judgment (paper 202), and exhibit 19 and the Tele-

13

Tector deposition excerpts associated with Sensormatic's opposition to SSC's motion for summary judgment and cross-motion for summary judgment (paper 210). Exhibit T and the Tele-Tector deposition excerpts are both excerpts from the deposition of William Emshwiller, of Tele-Tector, which is not a party to this action. Exhibits AA, BB, UU, and 19 are agreements, invoices, and records indicating the details of sales of security products and labels that include identifying customer information, product information, and prices. Mr. Davell has explained that this information is maintained as confidential by Sensormatic, and that if made public, the information could allow Sensormatic's competitors an unfair advantage and disrupt its business:

> Exhibit UUU [sic] from Plaintiff's Appendix contains a list of customers who purchased Sensormatic products in Virginia, Maryland, and Washington D.C., the products purchased, and the prices charged, among other information.
> Exhibits 19 from Defendants' Appendix, the Tele-Tector Deposition attached to Defendants' Appendix, and Exhibits T, AA, and BB from Plaintiff's Appendix contain listings of customers who purchased Sensormatic products from label distributors, products purchased, prices charged, and the terms of Sensormatic's agreement with the label distributors.
> The afore-mentioned information provides a window into who is buying what types of Sensormatic products in what quantities at what prices on what terms. It can be used by competitors to target and ultimately poach potential customers of EAS [label] and CCTV products and to structure their distribution network. Accordingly, Sensormatic, ADT, and the third-party distributors and dealers make

> considerable efforts to safeguard such information. For example, ADT and Sensormatic maintain customer lists and related customer information on a restricted database that only certain employees are authorized to access.

(Paper 232, Davell Decl. ¶¶ 2-4). This declaration supports the conclusion that each of the six documents identified contains sensitive and confidential information related to Sensormatic's business that could disrupt its business if publicly released.

The final factor that must be analyzed, pursuant to Local Rule 105.11(b), is whether alternatives to sealing the documents would provide sufficient protection for the interests favoring confidentiality. With respect to the two briefs filed under seal in the District Court for the Western District of Pennsylvania, no alternative means of assuring confidentiality is appropriate, because the briefs are fully under seal pursuant to that court's Order. With respect to the other six documents, however, Sensormatic, ADT, and Wallace have proposed redacted versions (paper 234; *id.*, Exs. 1-6) that, while they do not retain all of the relevant evidence related to the motions for summary judgment, provide a broader public record of the proceedings without making public confidential price or customer information. Specifically, the redacted Tele-Tector deposition excerpts and redacted exhibit T propose removal of pages that name particular customers because the pages were not cited by either party. Exhibits AA, BB, UU, and 19 would be redacted to remove customer names and addresses,

prices, and other identifying information. These redactions are adequate to protect the confidentiality interests asserted by Sensormatic, ADT, and Wallace, and also provide the public with a greater record of this proceeding than would be available if the documents were merely sealed. Accordingly, exhibits 3, 5, 19, and the Tele-Tector deposition submitted with Sensormatic's summary judgment brief will remain sealed, as will exhibits T, AA, BB, and UU submitted with SSC's motion for summary judgment. The Clerk will be directed to docket the redacted versions of exhibits 19, Tele-Tector Deposition, T, AA, BB, and UU (paper 234, Exs. 1-6) as the publicly available versions of these sealed documents. All other documents associated with this case that have been filed temporarily under seal will be unsealed within ten days if no further motion to seal is made within that time.

**IV. Conclusion**

For the foregoing reasons, the motion of Sensormatic, ADT, and Wallace for partial reconsideration of the court's September 7, 2006 Order will be denied and the motion to seal will be granted in part. A separate Order will follow.

                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge